# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>TARA JONES,<br><br>**Defendant.** | )<br>)<br>) Case No.  5:25-MJ-308 (ML)<br>)<br>)<br>)<br>)<br>) |

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the dates of February 2022 to in or about December 2024 in the county of Otsego in the Northern District of New York the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1347 | Health Care Fraud |

This criminal complaint is based on these facts:
See attached affidavit

☒     Continued on the attached sheet.

_____
*Complainant's signature*
Jennifer Tilly, Special Agent
_____
*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
*Judge's signature*

Date:  September 29, 2025

City and State:   Binghamton, NY     Hon. Miroslav Lovric, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT

1. I, Jennifer L. Tilly, am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since May 2009. I am currently assigned to a criminal squad in the Syracuse Resident Agency of the Albany Field Office, where I primarily investigate complex financial crimes, such as healthcare fraud and investment fraud.

2. Since becoming an FBI Special Agent, I received 21 weeks of formal training at the FBI Training Academy in Quantico, Virginia, as well as additional training in courses related to criminal and counterintelligence investigations. I have participated in numerous investigations of criminal activity, involving – among other things - health care fraud, wire fraud, and mail fraud. During these investigations, I have conducted or participated in surveillance; the execution of search and arrest warrants; analysis of financial and telephone records; and review of claims data, medical records, and other business records. Additionally, I have interviewed witnesses and victims with personal knowledge regarding the investigations in which I have been involved. As a result of my training and experience, I am familiar with techniques and methods of operation used by individuals involved in criminal activity to facilitate various kinds of fraud and to conceal their activities from detection by law enforcement authorities.

3. I am investigating this case with other law enforcement officers, including Special Agent Lara Hodge of the United States Department of Health and Human Services, Office of Inspector General ("HHS-OIG"), and Investigator Steven Ostrander of the New York State Department of Financial Services ("NYS DFS").

4. The facts set forth in this affidavit are based on my personal observations, my training and experience, the review of documents and records collected during this investigation, information obtained from interviewed witnesses, and information obtained and relayed to me by other investigators. Because this affidavit is being prepared for the limited purpose of securing a

1

criminal complaint, it does not include everything I know about this investigation. Unless specifically indicated, all conversations and statements described in this affidavit are related in sum and substance and in part. In addition, the events described in this affidavit occurred on or about the dates provided herein. Where figures, calculations, dates, and times are reported herein, they are approximations.

5. For the reasons set forth below, there is probable cause to believe that TARA JONES ("Jones") has violated Title 18, United States Code, Section 1347 (Health Care Fraud) (the "Subject Offense").

## Health Care Fraud Statutes

6. Pursuant to Title 18, United States Code, Section 1347(a), it is unlawful for any person to knowingly and willfully execute, or attempt to execute, a scheme or artifice (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery or of payment for health care benefits, items, or service.

7. Pursuant to Title 18, United States Code, Section 24(b), a "health care benefit program" is defined by "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under plan or contract."

## Background Regarding the Medicaid Program

8. Authorized by Title XIX of the Social Security Act, Medicaid was signed into law in 1965 alongside Medicare. The New York State Medicaid Program is a jointly funded federal-

state health insurance program that provides certain health benefits to the disabled, as well as to individuals and families with low income and resources. The federal involvement in Medicaid is largely limited to providing matching funds and ensuring that states comply with minimum standards in the administration of the program. Medicaid is a "federal health care program," as defined in Title 42, United States Code, Section 1320a-7b(f).

### Background Regarding the Defendant and Entities She has Formed

9. Jones was born "Tara Kamali-Nejad" in Iran in 1982. She moved to Canada and obtained Canadian citizenship. Jones has lived in the United States since 2011, according to information she provided with her immigration application. Jones identified her mother on the immigration paperwork as J-M.S-S and her father as I.K. Both resided in Canada when Jones initiated her U.S. citizenship application in 2018. Jones also said she had three daughters: Q.S., C.J., and V.J. From 2014 until January 2025, Jones had been employed as a physician by Bassett Medical Center in Richfield Springs, New York.

10. On or about November 28, 2018, Jones incorporated a business in Washington State identified as COLUMBIA FAMILY MEDICINE CLINIC, LLC ("Columbia Family Medicine"), according to incorporation documents found online. Jones was the registered agent associated with the incorporation documents. The location for Columbia Family Medicine was later given as 1123 County Highway 23, Fly Creek, NY. In June 2021, Jones signed a participating provider agreement with Excellus BlueCross BlueShield ("Excellus") for Columbia Family Medicine, operated as a private medical practice from 1123 County Highway 26, Fly Creek, New York, also Jones's residential address. Jones identified Columbia Family Medicine's phone number as the same number she provided for her personal phone on her immigration application.

3

**Probable Cause**

*Overview of Investigation*

11.     This investigation was initiated in May 2023, after the FBI and other agencies received information that Jones had been submitting claims to multiple private health insurance companies for services not rendered. As explained further below, follow-up investigation has established that Jones submitted claims for services purportedly rendered at her home, but the patients/beneficiaries say they have either never met Jones or met her only at Basset Medical Center's office where she worked for Basset. Further, when submitting claims to insurance providers, Jones put false addresses and phone numbers on the claim forms, which caused those beneficiaries not to receive notice from the insurance providers (*e.g.*, explanation of benefit forms). As part of an internal investigation by insurance companies' Special Investigation Units, Jones was asked to provide supporting medical records for certain billed services. After that request to Jones, she accessed patient records for Bassett Medical Center and apparently used the information from those records to create and submit false medical records for services purportedly rendered by her through Columbia Family Medicine.

*Examples of Fraudulent Claims Submitted by Jones for Bassett Medical Center Patients*

12.     Jones submitted claims to Excellus for services purportedly rendered to M.A. on February 16, 2022, April 4, 2022, and April 30, 2022, on a document she electronically signed. The claim was for $500, and Excellus paid $351.86.

      a.     Based on information obtained from Bassett Medical Center, Jones accessed Bassett's network and viewed but did not modify M.A.'s medical records on July 25, 2022, and July 27, 2022, each time for approximately four minutes and concerning several appointments/visits M.A. had at Bassett Medical Center.

4

      b.    M.A. was interviewed on April 15, 2024, and, in sum and substance and as relevant to this affidavit, stated as follows:

      i. she had received a bill from a doctor she did not know;

      ii. she could not identify Jones from a photograph and had never seen her before;

      iii. she could not identify the purported place of service from a photograph and had never been there before;

      iv. she had not heard of Columbia Family Medicine;

      v. she had received care from Bassett Medical Center but not from Jones; and

      vi. the paper claim submitted by Jones to Excellus had false information about M.A.'s home address and phone number.

13.    Jones submitted a claim to Excellus for services purportedly rendered to F.B. on June 18, 2021, June 22, 2021, June 24, 2021, July 8, 2021, July 13, 2021, and July 17, 2021, on a document she electronically signed on June 18, 2021. The claim was for $1,037.10, and Excellus paid nothing, as F.B.'s spouse reported fraudulent claims to their insurance provider. On September 20, 2022, Excellus received six claims for Medicare patient F.B. from Jones totaling $1,500.00. The insurance company denied these claims and paid nothing.

      a.    Based on information obtained from Bassett Medical Center, Jones accessed Bassett's network and viewed but did not modify F.B.'s medical records on June 15, 2022, for approximately nine minutes.

      b.    F.B. and his wife J.B. were interviewed on April 15, 2024, and, in sum and substance and as relevant to this affidavit, they stated as follows:

      i. neither could identify Jones from a photograph and had never seen her before;

      ii. neither could identify the purported place of service from a photograph and had never been there before;

      iii. the paper claim submitted by Jones to Excellus had false information about F.B.'s home address; and

      iv. F.B. had received care from Bassett Medical Center but not from Jones.

    c. On November 8, 2024, I made a consensually monitored call to Jones purporting to be F.B.'s and J.B.'s daughter inquiring about services purported rendered to F.B. Jones initially stated F.B. was not her patient but later said that he had been her patient in 2021 but was then transferred to another provider.

14. Jones submitted a claim to Excellus for services purportedly rendered to C.L. from July 22, 2021, through July 27, 2021, on a paper document she signed on July 22, 2021. The claim was for $1,500, and Excellus paid $837.15. The claim included dates of service that had not yet occurred.

    a. The address and phone number for C.L. on the paper claim form were both wrong.

    b. On October 3, 2022, Jones sent a fax to Excellus with a document requesting to remove the charges for C.L., indicating that they had been billed in error.

    c. Based on information obtained from Bassett Medical Center, Jones accessed Bassett's network and viewed but did not modify C.L.'s medical records on October 3, 2022.

    d. C.L. was interviewed on April 25, 2024, and, in sum and substance and as relevant to this affidavit, stated as follows:

        i. Jones's name was not familiar to him;

        ii. he could not identify Jones from a photograph and did not recognize her;

        iii. he could not identify the purported place of service from a photograph and had never been there before;

        iv. C.L. had received care from Bassett Medical Center but not from Jones; and

        v. the paper claim submitted by Jones to Excellus had false information about C.L.'s home address and phone number.

15. Jones submitted a claim to Excellus for services purportedly rendered to R.G. from March 15, 2022, through July 16, 2022, on a paper document she signed on March 15, 2022. The claim was for $750.00, and Excellus paid $474.57.

    a. On October 3, 2022, Jones sent a fax to Excellus with medical records purporting to relate to the services she provided to R.G.

    b. Information from Bassett Medical Center reflects that Jones accessed but did not modify R.G.'s medical records on October 1, 2022.

    c. R.G. was interviewed on April 25, 2024, and, in sum and substance and as relevant to this affidavit, stated as follows:

        i. he could not identify Jones from a photograph and did not recognize her;

    ii. he could not identify the purported place of service from a photograph and had never been there before;

    iii. R.G. had received care from Bassett Medical Center but not from Jones; and

    iv. the paper claim submitted by Jones to Excellus had false information about R.G.'s home address.

*Examples of False Claims Submitted by Jones for her Family Members*

16. Jones submitted multiple insurance claims on behalf of her own family members that there is probable cause to believe were knowingly false.

17. Between June 17, 2021, and August 25, 2022, Jones submitted approximately 113 claims totaling about $28,315 to Excellus for treatment of G.K. aka G.K-N. (a Medicaid recipient) for treatment purportedly occurring between January 5, 2021, and August 24, 2022. She received payment of approximately $15,073.07 for those claims.

18. Between April 21, 2023, and September 23, 2024, Jones sent 28 claims for Medicaid for G.K. totaling $2,640.00. Medicaid paid $1,975.46 for these claims. Between January 2, 2022, and September 16, 2022, Jones submitted 131 Medicaid claims for G.K. to Excellus totaling $32,815. Jones was paid $17,474.09 for these claims.

19. From March 08, 2023, to June 21, 2023, Jones submitted 17 claims for G.K.

    a. When asked to provide medical records to substantiate the claims, Jones provided apparently fictitious records that appear to be copies of records she accessed for legitimate patients of Bassett Medical Center. For instance, vital signs for records supposedly for services rendered to G.K. included dates that had not yet occurred, such as a record for treatment on March 22,

8

    2022, with vital signs dated September 26, 2022. In other cases, other patients' names were included. For example, a medical record dated January 12, 2022, referred to a patient named "Maghen." A record documenting service that allegedly took place on January 29, 2022, referred to a patient with the initials C.Y. rather than G.K.

  b. There also were inconsistencies within the medical records that Jones submitted for treatment of G.K. For example, the medical files Jones submitted to substantiate the claims stated that she had referred G.K. to specialists, but no claim for services was ever filed by a specialist. The records also included nonsensical notations like a reference to G.K. trying to conceive a child combined with other indications that the patient had a hysterectomy in 2012. Further suggestive that Jones altered legitimate notes she obtained from the Bassett Medical Center is a note for G.K. dated May 12, 2022, bearing the name of a former nurse practitioner at Bassett Medical Center rather than Jones's name as the provider.

20. Jones also submitted claims for treatment of her daughters C.J. and V.J. that she substantiated with apparently fictious records that she provided in response to an audit.

  a. For example, with respect to C.J.:

    i. On January 4, 2023, Jones sent a fax to Excellus that included purported medical records for C.J.'s treatment. Multiple parts of Jones's submission reflect that the records she provided are fakes. For example, (a) on one record C.J. was described as 2 years old and another as 3 years old, but her birthday was not in between the visit dates; (b) one

9

        record described C.J. as a boy; (c) records set C.J.'s weight variously at 60 pounds, 33 pounds, and 48 pounds, all purportedly for services within days of each other; and (d) two records had C.J.'s name wrong, and one of them described C.J. as a 5-year-old male.

    ii. For both records where C.J.'s name was misidentified, on the same day she sent the fax to Excellus, Jones had accessed Bassett Medical Center's systems and reviewed but not modified the records for the real patients whose information she apparently cut/pasted into the false records for C.J.

b. For example, with respect to V.J.:

    i. On January 23, 2023, Jones sent a fax to Excellus that included purported medical records for V.J.'s treatment. Multiple parts of Jones's submission reflect that the records she provided are fakes. For example, (a) records set V.J.'s weight variously as 20 pounds, 27 pounds, and 30 pounds, all purportedly for services separated by intervals where that weight gain makes little to no sense and in one instance where the weight was recorded as of a date that had not yet occurred; and (b) a record included the wrong name for V.J.

    ii. For the record where V.J.'s name was misidentified, Jones had accessed Bassett Medical Center's systems and reviewed but not modified the record for the real patient whose information she apparently cut/pasted into the false records for V.J.

*Other Evidence of Fraudulent Health Care Billings and Billing Totals*

21. In both 2022 and 2024, Jones denied working for any other medical practice in paperwork she gave to Bassett Medical Center, but she submitted claims for healthcare services purportedly rendered through Columbia Family Medicine during that timeframe, which funds she forwarded to bank accounts solely owned and controlled by her.

22. Between February 14, 2022, and December 31, 2024, Jones submitted via Columbia Family Medicine at least 35,000 claims. The total claims submitted was approximately $4,020,068 with approximately $2,464,134 paid.

23. Between May 1, 2021, and December 2, 2022, Jones submitted via Columbia Family Medicine at least 3,901 claims to Excellus. The total claims submitted was approximately $914,400 with approximately $496,404.37 paid.

*Interview of Jones*

24. On or about September 29, 2025, investigators interviewed Jones at her current place of business. That interview was audio recorded. In sum and substance and as relevant to this affidavit, Jones admitted that she was the sole operator of Columbia Family Medicine in New York. She claimed that she did not provide services for her family members and that she provided mostly telehealth services. She also claimed she worked part time for Bassett Medical Center until she left.

25. None of the purported patients interviewed above indicated that they saw Jones in telehealth visits, and the claims she submitted were not for telehealth services. Further, and apparently contrary to Jones's assertion, it appears she worked full time at Bassett Medical Center until January 2025.

## Conclusion

26. Based on the foregoing, there is probable cause to believe that Jones committed the Subject Offense.

**Attested to by the applicant in accordance with Federal Rule of Criminal Procedure 4.1**

Jennifer Tilly
Special Agent, FBI

I, the Honorable Miroslav Lovric, United States Magistrate Judge, hereby acknowledge that this affidavit was attested by the affiant by video conference on September  29 , 2025, in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Hon. Miroslav Lovric
United States Magistrate Judge